Filed 11/17/14  Rodriguez v. Acciani CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| ROBIN RODRIGUEZ, | B237238 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BC392209) |
| v. | |
| ROBERT ACCIANI, et al., | ORDER MODIFYING OPINION (CHANGE IN JUDGMENT); PETITION FOR REHEARING DENIED |
| Defendants and Appellants. | |
| ROBIN RODRIGUEZ, individually, etc., | B238916 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. BC392209) |
| v. | |
| ROBERT ACCIANI, et al., | |
| Defendants and Appellants. | |

THE COURT:

It is ordered that the opinion filed herein on October 27, 2014, and not certified for publication, be modified as follows:

1.  On the title page, the caption is corrected as indicated above.

2. On the title page, the first paragraph reads as follows:

APPEALS and CROSS-APPEAL from a judgment of the Superior Court of Los Angeles County, Victor E. Chavez, Judge. Reversed and remanded.

This paragraph is deleted and the following is substituted in its place:

APPEAL from a judgment and APPEAL and CROSS-APPEAL from a post-judgment order of the Superior Court of Los Angeles County, Victor E. Chavez, Judge. Reversed and remanded and dismissed.

3. On page 11, the last paragraph reads as follows:

In light of our reversal in the opinion in case No. B237238, the appeal and cross-appeal in B238916 are reversed for further determination following retrial of the main action. The parties are to bear their own costs in case No. B238916.

This paragraph is deleted and the following is substituted in its place:

In light of our reversal of the judgment, the trial court is directed to vacate its post-judgment cost order and to enter a new order following retrial. The appeal and cross-appeal of the post-judgment order are dismissed. The parties are to bear their own costs in case No. B238916.

The foregoing changes the judgment.

The petition for rehearing filed by Robin Rodriguez is denied.

**PERLUSS, P. J.**          **WOODS, J.**          **ZELON, J.**

Filed 10/27/14  Rodriguez v. Acciani CA2/7 (unmodified version)

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| ROBIN RODRIGUEZ,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>ROBERT ACCIANI, et al.,<br><br>    Defendants and Appellants. | B237238<br><br>(Los Angeles County<br>Super. Ct. No. BC392209) |
| ROBIN RODRIGUEZ, individually, etc.,<br><br>    Plaintiffs, Appellants and<br>    Cross-Respondents,<br><br>    v.<br><br>ROBERT ACCIANI, et al.,<br><br>    Defendants, Respondents and<br>    Cross-Appellants. | B238916<br><br>(Los Angeles County<br>Super. Ct. No. BC392209) |

        APPEALS and CROSS-APPEAL from a judgment of the Superior Court of Los Angeles County, Victor E. Chavez, Judge.  Reversed and remanded.

Horvitz & Levy, David M. Axelrad and Julie L. Woods; P.K. Schrieffer, Paul K. Schrieffer and Stanley R. Escalante for Defendants and Appellants Robert Acciani and Dorothy Acciani.

Manning & Kass Ellrod Ramirez Trester, Timothy J. Kral and Kevin H. Louth for Defendants and Appellants County of Los Angeles, Detective Curtis Henderson, Detective Christine Moreno-Anderson and Sergeant Barbara White.

Law Office of Barry M. Wolf and Barry M. Wolf for Plaintiff and Respondent.

_____

Rami Rodriguez (Rami) was the subject of an elder abuse criminal investigation by the Los Angeles County Sheriff's Department (Sheriff's Department).[1]

Robin Rodriguez, Rami's widow (Robin), sued the County of Los Angeles (County)[2] and individual defendants Christine Moreno-Anderson (Anderson), Curtis Henderson (Henderson), and Barbara White (collectively, the County defendants) along with Dorothy Acciani and her husband Robert Acciani (the Accianis) for damages based on allegations, among others, they engaged in a three-year long conspiracy to inflict intentional emotional distress on Robin by separating her from Rami and attempting to undo their marriage in furtherance of the Accianis' plan to achieve financial gain through Rami's assets.

---

[1] During the relevant timeframe, Rami was a dependent adult. Whether he was an elder or dependent adult under these circumstances is inconsequential. (Pen. Code, § 368, subds. (g) & (h).) We therefore shall refer to the alleged abuse against Rami as abuse against an elder for clarity and convenience.

[2] "County of Los Angeles Sheriff's Department" was sued as a separate defendant. The judgment does not include this defendant, which is not a party to this appeal.

2

The County defendants appeal[3] from the "Fourth Amended Judgment" on the "Third Amended Special Verdict Form" awarding Robin $2.25 million[4] based on the jury's verdicts that the County defendants and the Accianis engaged in a conspiracy to intentionally inflict emotional distress on Robin.[5]  The Accianis, who also appealed, dismissed their appeals as part of a settlement agreement with Robin.

On appeal, the County defendants assert the judgment must be reversed and a new judgment entered in favor of the individual County defendants and the County.  They contend, as a matter of law, all the conduct of the individual County defendants and the nonparty County employees occurred within the scope of their employment and for this reason the individual County defendants and nonparty County employees are immune

---

[3]  Judgment was entered in favor of Kwan Chow, a deputy sheriff during the underlying events and a named defendant.  He is not a party to this appeal.

[4]  This amount reflects the correction of an inadvertent addition mistake on the verdict form.  The County defendants and the Accianis were "jointly and severally liable" to Robin in this amount.

[5]  This action was brought by Robin, as an individual, and Robin, as executor for the Estate of Rami Rodriguez.  The operative complaint alleged eight causes of actions and claims: (1) conspiracy to deprive constitutional rights in violation of Civil Code section 52.1; (2) conspiracy to abuse process; (3) conspiracy to commit false imprisonment; (4) conspiracy to trespass; (5) conspiracy to intentionally inflict emotional distress; (6) conspiracy to commit conversion; (7) replevin of personal property wrongfully taken through conspiracy; and (8) loss of consortium arising from defendants conspiracy to separate Robin from Rami.

The County defendants and the Accianis prevailed on their motions for nonsuit on the causes of actions and claims for conversion, violation of the Bane Act (Civ. Code, § 52.1); abuse of process, false imprisonment; and punitive damages.  These defendants also prevailed on their motions for judgment notwithstanding the verdict on the conspiracy to trespass cause of action.  Later, the trial court granted a nonsuit on the loss of consortium claim.  Judgment was entered in favor of the County defendants and the Accianis against the Estate of Rami Rodriguez (Estate).  The Estate is not a party to this appeal.

from liability pursuant to Government Code section 821.6[6] for conspiracy to inflict intentional emotional distress on Robin. They contend the County defendant, as a public entity, therefore also is immune, because "a public entity is not liable for an injury resulting from an act or omission of an employee of the public entity where the employee is immune from liability." (§ 815.2, subd. (b).)

Alternatively, the County defendants contend the judgment must be reversed and the matter remanded for a new trial, because the trial court prejudicially omitted crucial statutory language in instructing the jury on section 821.6 and the jury returned an inconsistent verdict, finding, on the one hand, the County employees did not act "within the course and scope of their employment with the County," and finding, on the other, the County was vicariously liable to Robin based on its employees' conduct.

We agree the trial court committed instructional error and that this error was prejudicial to the County defendants. We therefore reverse the judgment and remand for a new trial based on proper instruction of the jury. [7]

## BACKGROUND

Robin met Rami in 1982. They married in May 2000.

On January 9, 2002, and February 20, 2002, Dr. Harriet Cokely, a neurologist, examined Rami. She opined he had Alzheimer's disease.

In April 2003, Rami executed a power of attorney giving Robin authority over his financial assets.

---

[6] All further section references are to the Government Code unless otherwise indicated.

[7] This disposition obviates the need to address the County defendants' remaining contentions except the inconsistencies within the jury verdict on the issue of prejudice. As a result, we need not discuss the evidence presented at trial in detail; we note that there were substantial conflicts in the evidence on critical issues which preclude resolving the issue of immunity as a matter of law.

4

On October 6, 2003, Rami left home to run errands. On that day, family members took Rami, who felt ill, to the Torrance Memorial Medical Center (Torrance Hospital). The family made allegations to hospital personnel that Rami was malnourished and over-medicated, and that he had been poisoned by Robin.

From the hospital, a social worker called the Sheriff's Department. On October 9, 2003, Deputy Anderson responded, and conducted two interviews with Rami, one on October 9, 2003, and the other on October 24, 2003. Rami's test results, including for poison and malnutrition, were negative. Anderson's investigation then focused on the alleged financial elder abuse of Rami.

Additional deputies became involved with the matter as a result of other disputes about Rami's property. On June 1, 2004, Rami's case was transferred to Henderson, a detective with more elder abuse and real estate experience.

On January 24, 2005, Henderson interviewed Rami at his residence with Robin. The evidence concerning these events and their aftermath was in substantial conflict, in a manner which implicated the basis for the scope and course of the investigation, but, after the interview, Henderson prepared a report dated January 27, 2005, in which he indicated the investigation remained ongoing; he submitted the report to the supervising probate investigator. The case was closed on February 3, 2005 for lack of evidence of criminal activity. Henderson retired in March 2005.

Later in 2005, Sergeant William Morris assigned White to determine if further investigation was necessary. White testified her review of the file documents gave rise to her concerns about possible financial elder abuse by Robin, but ultimately concluded no criminal investigation should go forward, and terminated her investigation. Rami died on August 11, 2006.

While a police practices expert was called, he provided no testimony regarding whether the conduct of these individual County defendants fell within or outside the scope of their employment.

*DISCUSSION*

1. *Applicable Legal Principles*

a. *Duty of Law Enforcement in Elder Or Dependent Adult Abuse Cases*

The State of California has enacted criminal and civil statutes to prevent and punish abuse of elders and dependent adults. "Since 1982, the Legislature has enacted numerous measures to prevent the abuse of elders. [Citations.] Generally, 'the Legislature has proceeded carefully and diligently in its effort to curb the worst practices against our elders.' [Citation.]" (*Das v. Bank of America, N.A.* (2010) 186 Cal.App.4th 727, 734-735.)

"Penal Code section 368 was enacted, making it a felony or misdemeanor (depending on the circumstances), for [an abuser] of an elder or dependent adult to willfully cause or permit various types of injury. (Stats. 1986, ch. 769, § 1.2, p. 2531.)" (*Delaney v. Baker* (1999) 20 Cal.4th 23, 33.) "Local law enforcement agencies and state law enforcement agencies with jurisdiction shall have concurrent jurisdiction to investigate elder and dependent adult abuse and all other crimes against elder victims and victims with disabilities." (Pen. Code, § 368.5, subd. (a).)

Additionally, those who commit elder or dependent adult abuse are "subject to heightened civil remedies under the Elder Abuse and Dependent Adult Civil Protection Act (Welf. & Inst. Code, § 15600 et seq.) (Elder Abuse Act or Act)." (*Covenant Care, Inc. v. Superior Court* (2004) 32 Cal.4th 771, 776; see also, Stats. 1982, ch. 1184, p. 4223, § 3 [enactment of Act].) The Legislature expressed its intent with regard to law enforcement in these cases: "[I]t is the intent of the Legislature in enacting this chapter to provide that adult protective services agencies, local long-term care ombudsman programs, and local law enforcement agencies shall receive referrals or complaints from public or private agencies, from any mandated reporter submitting reports pursuant to Section 15630, or from any other source having reasonable cause to know that the welfare of an elder or dependent adult is endangered, and shall take any actions considered necessary to protect the elder or dependent adult and correct the situation and ensure the individual's safety." (Welf. & Inst. Code, § 15600, subds. (h) & (i).)

Local law enforcement agencies therefore must receive reports or complaints of elder or dependent adult abuse allegations; investigate such allegations; and "take any actions considered necessary to protect the elder or dependent adult and correct the situation and ensure the individual's safety." (Welf. & Inst. Code, § 15600, subd. (i).)

b. *Immunity of Public Employees and Public Entity*

"A public employee is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, even if he acts maliciously and without probable cause." (§ 821.6.) "Investigations are considered to be part of judicial and administrative proceedings for purposes of section 821.6 immunity. [Citation.]" (*Richardson-Tunnell v. School Ins. Program for Employees (SIPE)* (2007) 157 Cal.App.4th 1056, 1062 (*Richardson-Tunnell*).) Immunity extends to acts which are "incidental to the investigation of the crimes" (*Amylou R. v. County of Riverside* (1994) 28 Cal.App.4th 1205, 1211 (*Amylou*)) and "even if the authorities later decide not to file charges." (*Gillan v. City of San Marino* (2007) 147 Cal.App.4th 1033, 1048.)[8]

---

[8] "California courts construe section 821.6 broadly in furtherance of its purpose to protect public employees in the performance of their prosecutorial duties from the threat of harassment through civil suits. [Citations.]" (*Gillan v. City of San Marino, supra*, 147 Cal.App.4th at p. 1048.) "Section 821.6 is not limited to the act of filing a criminal complaint. Instead, it also extends to actions taken in preparation for formal proceedings. Because investigation is 'an essential step' toward the institution of formal proceedings, it 'is also cloaked with immunity.' (*Kemmerer v. County of Fresno* (1988) 200 Cal.App.3d 1426, 1436-1437; see, e.g., *Johnson v. City of Pacifica* (1970) 4 Cal.App.3d 82, 84 [police officers immune for their negligent investigation of a crime]; *Stearns v. County of Los Angeles* (1969) 275 Cal.App.2d 134, 136–137 [negligent performance of autopsy]; *Jenkins v. County of Orange* (1989) 212 Cal.App.3d 278, 283–284 [negligent investigation by social worker of reports of child abuse].)" (*Amylou R. v. County of Riverside, supra*, 28 Cal.App.4th at pp. 1209-1210; cf. *Catsouras v. Department of California Highway Patrol* (2010) 181 Cal.App.4th 856 [factual issue whether officers investigation immunity applied where alleged placement on the internet of decedent's corpse for lurid titillation of persons unrelated to official business].)

7

"Under the doctrine of respondeat superior, an employer may be held vicariously liable for torts committed by an employee *within the scope of employment*. [Citations.]" (*Mary M. v. City of Los Angeles* (1991) 54 Cal.3d 202, 208, italics added.) "A public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative." (§ 815.2, subd. (a).) On the other hand, "[a] public entity is not liable for an injury resulting from an act or omission of an employee of the public entity where the employee is immune from liability." (§ 815.2, subd. (b).)

"An employer may be held responsible for tortious conduct by an employee only if the tort is committed within the course and scope of employment. [Citation.] Analytically, the question of whether a tort is committed within the course of employment turns on whether (1) the act performed was either required or instant to the employee's duties or (2) the employee's misconduct could be reasonably foreseen as an outgrowth of the employee's duties. [Citation.]" (*Rita M. v. Roman Catholic Archbishop* (1986) 187 Cal.App.3d 1453, 1461.) In other words, "[a]n employee is acting in the course and scope of his employment when he is engaged in work he was employed to perform, or when the act is incident to his duty and is performed for the benefit of his employer, *not to serve his own purposes or convenience*. [Citation.]"[9] (*Richardson-Tunnell, supra,* 157 Cal.App.4th at p. 1062, italics added.)

---

[9]    This exception is reflected in "'"cases . . . where the employee has *substantially deviated from his duties for personal purposes*." [Citation.]' [Citation.] 'Thus, if the employee "inflicts an injury out of personal malice, not engendered by the employment" [citation] or acts out of "personal malice unconnected with the employment" [citation], or if the misconduct is not an "outgrowth" of the employment [citation], the employee is not acting within the scope of employment. Stated another way, "[i]f an employee's tort is personal in nature, mere presence at the place of employment and attendance to occupational duties prior or subsequent to the offense will not give rise to a cause of action against the employer under the doctrine of respondeat superior." [Citation.] In such cases, the losses do not foreseeably result from the conduct of the employer's

## 2. *Prejudicial Instructional Error Shown*

Section 821.6 provides: "A public employee is not liable for injury caused by his instituting or prosecuting any judicial administrative proceeding within the scope of his employment, even if he acts maliciously and without probable cause." The County defendants contend that, in instructing the jury on their immunity defense under section 821.6, the trial court committed prejudicial error by omitting the statutory language: "even if he acts maliciously and without probable cause." (§ 821.6.) We agree.

During the hearings on instructions, the County proposed an instruction using the statutory language; after argument, the court determined that the clause at issue need not be given.

The written instruction on section 821.6 as approved and given as modified by the trial court, read: "Public employees are not liable for injuries caused by their instituting or prosecuting any judicial or administrative proceeding within the scope of their employment."

An instruction couched in the language of the applicable statute is appropriate. (*Metcalf v. County of San Joaquin* (2008) 42 Cal.4th 1121, 1131.) Although the instruction on section 821.6, as given, essentially tracks some of the language of that provision, the instruction was insufficient, because the remaining statutory language was omitted, i.e., "even if he acts maliciously and without probable cause." (§ 821.6.)

The omission of this quoted language prejudiced the County defendants. (*Mitchell v. Gonzales* (1991) 54 Cal.3d 1041, 1054 [prejudicial if "reasonably probable that a result more favorable to the appealing party would have been reached in the absence of error"].) Pursuant to section 821.6, each of these defendants was immune from liability "even if he acts maliciously and without probable cause." That the absence of this omitted language confused the jury is demonstrated by the inconsistent special verdicts the jury returned.

---

enterprise and so are not fairly attributable to the employer as a cost of doing business.'" [Citation.]" (*Vogt v. Herron Const., Inc.* (2011) 200 Cal.App.4th 643, 649-650; internal quotation marks in original.)

The jury found the County, Anderson, Henderson, White, and the Accianis engaged in a conspiracy to "[i]ntentionally inflict emotional distress on [Robin]." The jury found Chow did not engage in such a conspiracy. Nonetheless, the jury found that in inflicting the intentional emotional distress, the conduct of Chow, as well as these other defendants, was "outrageous"; these defendants "act[ed] with reckless disregard of the probability that [Robin] would suffer emotional distress, knowing that [Robin] was present when the conduct occurred"; and the "defendants' conduct [was] a substantial factor in causing [Robin's] severe emotional distress[.]" The jury made no findings whatsoever in this regard as to the "Non-Party [County] Employees."

The jury was asked to "answer yes or no as to each defendant" to the question whether the jury found "any of the . . . defendants listed below acted within the course and scope of their employment with the County . . . when [Robin was] harmed[.]" The jury answered no as to the listed defendants: Anderson, Henderson, White, Chow and "Non-Party [County] Employees."

The liability of the County defendant, which is strictly vicarious in this instance,[10] depends on whether the conspiracy to inflict intentional emotional distress on Robin was committed *within* the scope of employment. (§ 815.2, subd. (a).) The jury's finding that County defendant is vicariously liable to Robin therefore is inherently inconsistent with the jury's attendant findings the individual defendants and Chow acted outside the scope of their employment.

### CONCLUSION

In instructing on the section 821.6 immunity defense, the trial court erred by omitting the statutory language "even if he acts maliciously and without probable cause." (§ 821.6.) This error was prejudicial because such omission misled the jury as to what constitutes "scope of employment" and the applicability of the defense where an elder abuse investigation is conducted even "maliciously and without probable cause," and

---

[10]    Robin did not seek to hold the County defendant liable on a direct liability theory.

10

resulted in the jury returning inconsistent verdicts. The judgment therefore must be reversed and the matter remanded for a new trial based on a proper instruction under section 821.6.

## *DISPOSITION*

The judgment in B237238 is reversed and the matter is remanded with directions to the trial court to conduct a new trial at which the jury shall be instructed on the County defendants' immunity defense pursuant to the entire statutory language of section 821.6. The County defendants shall recover their costs on appeal in case No. B237238.

In light of our reversal in the opinion in case No. B237238, the appeal and cross-appeal in B238916 are reversed for further determination following retrial of the main action. The parties are to bear their own costs in case No. B238916.

**WOODS, J.**

**We concur:**

**PERLUSS, P. J.**                              **ZELON, J.**

11