Filed 5/31/16  Walker v. PennyMac Loan Services CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| ART WALKER,<br><br>        Plaintiff and Appellant,<br><br>v.<br><br>PENNYMAC LOAN SERVICES, LLC,<br><br>        Defendant and Respondent. | A142849<br><br>(City & County of San Francisco<br>Super. Ct. No. CGC13532110) |

Art Walker appeals after the court sustained demurrers to his complaint for damages arising from a non-judicial foreclosure sale of his home.  The nub of his allegations is that the bank foreclosed even though he made all of his loan payments on time and prevented him from reinstating the loan before the sale by refusing to provide him an accurate reinstatement figure.  The complaint sufficiently alleges causes of action for breach of contract and wrongful foreclosure, so we reverse as to those causes of action.  Other issues that were not addressed in Walker's opening appellate brief concerning Civil Code section 2924, subdivision (a)(1)(C),[1] false light, and unfair business practices, are abandoned.

**BACKGROUND**

Because this appeal challenges an order sustaining a demurrer, we draw the relevant facts from the complaint and documents subject to judicial notice.  (*Adams v. Paul* (1995) 11 Cal.4th 583, 586; *Hamilton v. Greenwich Investors XXVI, LLC* (2011) 195 Cal.App.4th 1602, 1608–1609 (*Hamilton*).)

---

[1] Further statutory citations are to the Civil Code.

1

# I. The Complaint

Walker refinanced his home in November 2006. Defendant PennyMac Loan Services, LLC (PennyMac)[2] subsequently became the beneficiary of the loan, assumed servicing the loan and the rights and obligations under the promissory note and deed of trust.

As alleged in the operative second amended complaint, PennyMac "recorded a Notice of Default when Plaintiff *was not late* on his payments." (Italics in original) Walker alleged he made monthly mortgage payments of $3,751.56 every month between November 2006 and December 2011. He received notices that the amount of his monthly payments was lowered in January 2012 $2,526.56 and again in July 2012 to $1.914.06. Walker made those payments through July 2012.

In June 2012, PennyMac notified Walker that his loan was in default "for his February 2012 payment, as well as every payment since June 2012." Walker checked his statement and saw that since February 2012 none of his payments had been applied to his account. When he called PennyMac, he was told his payments were not being applied to his account because they were instead first applied to late charges PennyMac said he had incurred. Walker unsuccessfully told PennyMac this was incorrect and that his payments should be applied to his account.

Walker did not receive his usual monthly mortgage statement in August, so he called PennyMac and attempted to make a payment. PennyMac said his loan was in default, so they would no longer accept his payments. In September PennyMac recorded a notice of default that said Walker had failed to make monthly payments since March and was in default for $16,139.34. Walker again contacted PennyMac to try to resolve the dispute, but "after many phone calls throughout September 2012 through February 2013, he was unable to speak with anyone at PennyMac to determine the [amount]

---

[2] The complaint names Pnmac Mortage Opportunity Fund Investors, LLC as an additional defendant and alleges it assumed the ownership of his loan. Because any differences between the two entities are not relevant to the issues raised on appeal, for simplicity's sake we will refer to both entities as PennyMac.

actually due on his mortgage." He finally received a reinstatement quote from PennyMac in February, but the quote was inaccurate "*in that it demanded payment for the months of March 2012 through July 2012, months in which [Walker] had made his mortgage payment.*" (Italics added.) Walker tried to contact PennyMac to determine the correct reinstatement figure and advise PennyMac that he had already made his payments for March through July, but PennyMac refused to discuss it with him and continued to demand payment.

In April 2013 PennyMac recorded a notice of trustee's sale. Walker continued trying to obtain an accurate reinstatement quote throughout that month, but PennyMac refused to comply. A friend of his attended the May 6, 2013 Trustee's sale "with enough cash to either reinstate the loan or purchase the property for the loan amount," but PennyMac refused to accept the offer and sold the property to third parties.

The cause of action for breach of contract alleged PennyMac breached the terms of the note by misapplying Walker's February through July 2012 mortgage payments to late charges before interest and principle. A cause of action for wrongful foreclosure alleged the notice of default incorrectly stated Walker was in default as of March 1, 2012, although he had made his payments for March through July; that PennyMac's arrearage figure "was an inaccurate amount, inflated with late fees and attorneys' fees, for months in which Plaintiff was not late;" and that "from September 2012 through May 2013, Defendants continued to provide Plaintiff with an inaccurate reinstatement quote, which demanded that Plaintiff tender monies for months in which Plaintiff was not in default," thereby interfering with his statutory right to reinstate his loan prior to the sale. Walker was, "at all times, ready, willing and able to reinstate the loan" but PennyMac "refused Plaintiff's attempts and continued to demand an inaccurate reinstatement amount."

## II. The Demurrers

Walker filed the initial complaint in June 2013 and a first amended complaint in November 2013. The amended pleading alleged causes of action for breach of contract, wrongful foreclosure, false light and unfair competition but omitted a cause of action for quiet title that appeared in the original pleading. PennyMac filed a demurrer, which was

3

sustained as to the causes of action for breach of contract, wrongful foreclosure and false light.

When Walker filed a second amended complaint (the complaint), PennyMac demurred again. This time the court sustained the demurrer without leave to amend and dismissed the action with prejudice. Its written order stated: "Plaintiff fails to allege an actionable breach of contract; facts asserted in the complaint do not support [the] allegation of breach of paragraph 2 of the Deed of Trust. Cause of action for false light is barred by the statute of limitations. . . . Plaintiff fails to allege tender. Plaintiff did [not] provide any facts that may be alleged to amend the complaint."

Walker appealed from the order on August 14, 2014. Although the record does not include a judgment of dismissal, in the interest of expediency we will construe the appeal as from a final judgment. (See *McAllister v. County of Monterey* (2007) 147 Cal.App.4th 253, 278.)

## DISCUSSION

### I. Standards of Review

We review an order sustaining a demurrer de novo to determine whether the complaint states facts sufficient to constitute a cause of action. (*Bower v. AT&T Mobility,* LLC (2011) 196 Cal.App.4th 1545, 1552; *Stanton Road Associates v. Pacific Employers Ins. Co.* (1995) 36 Cal.App.4th 333, 340 (*Stanton Road*).) We construe the complaint liberally, treating it " ' "as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed." [Citation.] Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. . . .' " (*Stanton Road, supra,* 36 Cal.App.4th at pp. 340–341; *Jager v. County of Alameda* (1992) 8 Cal.App.4th 294, 296–297.) When a demurrer is sustained without leave to amend, "we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm. [Citations.] The burden of proving

4

such reasonable possibility is squarely on the plaintiff.' [Citations.]" (*Stanton Road, supra*, at p. 341.)

## II. Analysis

### A. Breach of Contract

According to the complaint, PennyMac misapplied Walker's February through July 2012 mortgage payments to late charges instead of interest and principle. Walker alleged this was a breach of section 2 of the deed of trust (appended to the complaint) which in part stated that " 'all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note. . . . Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.' "

But, as PennyMac observes, the complaint omitted material language from section 2. Specifically, the passage quoted by Walker is qualified by the immediately preceding phrase, "*Except as otherwise described in this Section 2. . . .*" (Italics added.) Then, directly following the quoted language, section 2 goes on to provide: "if Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due." PennyMac argues that, taking section 2 as a whole, Walker failed to allege a breach of contract because his payments "very well may have been applied to outstanding payments and corresponding late charges" as authorized by the language omitted from the complaint.

As a factual matter, that might be the case. Or, it might not. The difficulty with PennyMac's argument is that this is a demurrer, and PennyMac's argument turns on a

5

question of fact.  The question is not whether Walker can prove a breach of contract, but whether his allegations, liberally construed, are sufficient to constitute the cause of action.  We think his allegations get over that hurdle.  The complaint, read as a whole and liberally construed, alleges that Walker was not late on his payments; that he made them every month in an amount instructed by PennyMac; that the loan was current as of December 2011; and that he thereafter continued to make his payments in the correct amounts until PennyMac told him in July 2012 that it would no longer accept them.

For purposes of a demurrer, these allegations support a reasonable inference that PennyMac applied Walker's payments to purported late charges that he had not incurred, rather than to interest and principal, in breach of the deed of trust.  " 'Ordinarily, a general demurrer should not be sustained unless the complaint liberally construed fails to state a cause of action on any theory.  [Citations.]  Material facts alleged in the complaint are treated as true for the purpose of ruling on the demurrer.  [Citation.]  Also taken as true are facts that may be implied or inferred from those expressly alleged. . . .  In short, the ruling on a demurrer determines a legal issue on the basis of assumed facts, i.e., all those material, issuable facts properly pleaded in the complaint, regardless of whether they ultimately prove to be true.  The complaint will ordinarily be upheld even though the facts are not clearly stated, or are intermingled with a statement of irrelevant facts.' " (*State of California ex rel. Bowen v. Bank of America Corp*. (2005) 126 Cal.App.4th 225, 239–240.)  The complaint could certainly have been clearer, but it is sufficient to state a cause of action for breach of contract.

### B.  Wrongful Foreclosure

The cause of action for wrongful foreclosure rests on closely related factual assertions.  As noted, the complaint alleges that from the initial notice of default through May 2013, PennyMac persisted in giving Walker an inaccurate quote  for the amount necessary to cure his purported default.  Walker alleged he made numerous attempts to obtain an accurate reinstatement figure and was at all times ready, willing and able to reinstate his loan, but PennyMac's refusal to comply prevented him from doing so.

6

Mortgage lenders have a statutory duty to provide accurate information to a defaulting borrower who requests information concerning the amount necessary to exercise its right to cure the default and reinstate the loan by paying the amount owed. [3] (§ 2924c subds. (a)(1), (e); *Anderson v. Heart Federal Savings* (1989) 208 Cal.App.3d 202, 215–217 (*Anderson*); *Susilo v. Wells Fargo Bank, N.A.* (C.D. Cal. 2011) 796 F.Supp.2d 1177, 1187–1188; *In re Tome* (Bankr. C.D. Cal. 1990) 113 B.R. 626, 636.). "The obligation of the [lender] to provide the [borrower] with an accurate accounting of the amounts due to cure a default is governed by statute. Section 2924 specifies that a copy of the notice of default must be sent to the [borrower] together with 'the statement specified in paragraph (1) of subdivision (b) of Section 2924c' that the [borrower] may have the 'legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law' and informs him that: 'This amount is _____ as of (*date*). . . .' " (*Anderson, supra,* 208 Cal.App.3d at p. 215.) The notice of default must include the name, mailing address and telephone number the borrower can use to find out "*the amount you must pay*, or to arrange for payment to stop the foreclosure. . . ." (§ 2924c, subd.(b)(1), italics added.) "Compliance with this provision necessarily requires that the beneficiary provide accurate information in response to an inquiry by the trustor." (*Anderson, supra*, at p. 216.)

PennyMac does not directly address Walker's claim that he could and would have reinstated the loan pursuant to section 2924c but for PennyMac's refusal to tell him the amount actually owed. Instead, PennyMac alludes to Walker's allegation that his friend unsuccessfully attempted to reinstate the loan or purchase the property at the trustee's sale. True, the right to reinstate lapsed five days before the sale (§2924c, subd. (e)), so his friend's alleged offer was of no effect. But that ineffective offer has no bearing on Walker's distinct allegation that PennyMac prevented him from reinstating his loan

---

[3] To be clear, the statutory reinstatement amount does not include "the portion of principal as would not then be due had no default occurred." (§ 2924c, subd. (a)(1)(C); see Miller & Starr, California Real Estate (4th ed. 2015) § 13:230, pp. 13-18 – 13-20.)

7

*during the statutory reinstatement period* by refusing to provide him an accurate reinstatement figure.

PennyMac argues, in essence, that its compliance with section 2924c was good enough, even if it quoted the wrong reinstatement amount, because Walker was on notice of the default and "does not allege he suffered prejudice as a result of the purportedly deficient notice." Not so. The complaint plainly alleges that Walker was ready, able and willing to reinstate, and that he would have done so had PennyMac given him an accurate figure. Assuming the truth of those allegations, prejudice is obvious. PennyMac also suggests it was Walker's obligation to dispute the allegedly inaccurate reinstatement figure by "us[ing] the legal process to attempt to halt the foreclosure sale or pay the reinstatement and work with or sue PennyMac to recover the overpayment." Not so. Section 2924c places the burden on the lender to notify the borrower of the amount required for reinstatement. (§ 2924c, subd. (b)(1); *Anderson, supra,* 208 Cal.App.3d at p. 216.) "Because nonjudicial foreclosure is a 'drastic sanction' and a 'draconian remedy' [citation], ' "[t]he statutory requirements must be strictly complied with." (*Ung v. Koehler* (2005) 135 Cal.App.4th 186, 202–203.) By no measure is sending out an incorrect dollar figure and leaving it to the borrower to pay an incorrect amount and fight it out in court adequate compliance with the statute.

## C. Tender

PennyMac contends the trial court properly sustained the demurrer as to all causes of action because the complaint fails to allege that Walker tendered the amount of the secured indebtedness. Here too, we disagree.

"A power of sale in a deed of trust is a creature of contract, arising from the parties' agreement. . . . As is typical, the deed of trust . . . allows the beneficiary to exercise its power of sale only if an 'event of default' occurs." (*Bank of America., N.A. v. La Jolla Group II* (2005) 129 Cal.App.4th 706, 712.) Here, the breach of contract claim alleged, in effect, that there was no default triggering PennyMac's right to foreclose under the deed of trust. If there was no default, PennyMac had no right to foreclose on Walker's property, the trustee's sale was void, and, under settled law, no tender was

8

required.  (*Barroso v. Ocwen Loan Servicing, LLC* (2012) 208 Cal.App.4th 1001, 1016–1017; see also *Alvarez v. BAC Home Loans Servicing, L.P.* (2014) 228 Cal.App.4th 941, 951–952 (*Alvarez*) [tender not required where borrowers alleged lenders negligently failed to process applications for loan modification]; *Menan v. U.S. Bank Nat. Ass'n* (E.D. Cal. 2013) 924 F.Supp.2d 1151, 1160 ["The law does not require plaintiff to tender the purchase price to a trustee who has no right to sell the property at all"].)

We are also unpersuaded that the tender requirement applies to Walker's claim that PennyMac interfered with his right of reinstatement under section 2924c.  *Mabry v. Superior Court* (2010) 185 Cal.App.4th 208 (*Mabry*) is instructive.  The borrower there alleged that its lender breached its duty under section 2923.5 to contact the borrower to explore options for preventing foreclosure before filing notice of default.  The court held the borrower was not required to tender the full amount of indebtedness before challenging the foreclosure on that ground.  It explained: "Case law requiring payment or tender of the full amount of payment before any foreclosure sale can be postponed (e.g., *Arnolds Management Corp. v. Eischen* (1984) 158 Cal.App.3d 575, 578 . . . ['It is settled that an action to set aside a trustee's sale for irregularities in sale notice or procedure should be accompanied by an offer to pay the full amount of the debt for which the property was security.']) arises out of a paradigm where *by definition*, there is no way that a foreclosure sale can be avoided absent payment of *all* the indebtedness.  Any irregularities in the sale would necessarily be harmless to the borrower if there was no full tender.  [Citation.]  By contrast, the whole point of section 2923.5 is to create a new, even if limited, right to be contacted about the possibility of *alternatives* to full payment of arrearages.  It would be contradictory to thwart the very operation of the statute if enforcement were predicated on full tender."  (*Mabry, supra*, 185 Cal.App.4th at p. 225.)

Here, it would be equally nonsensical to require a borrower who alleges the lender illegally interfered with his statutory right to *reinstate his loan by paying the amounts then in default* to tender the full amount of his indebtedness.  By parity of reasoning, we likewise decline to undermine the right protected in section 2924c, by contorting the tender rule, generally applied in actions to set aside a trustee's sale for irregularities in

9

sale notice or procedure (*Alvarez v. BAC Home Loans Servicing, L.P.*, *supra*, 228 Cal.App.4th at p. 951), to apply to claims alleging a violation of section 2924c.

### D.  Remaining Causes of Action

"Courts will ordinarily treat the appellant's failure to raise an issue in his or her opening brief as a waiver of that challenge."  (*Paulus v. Bob Lynch Ford, Inc.* (2006) 139 Cal. App. 4th 659, 685.)  Walker's opening brief includes no argument concerning the rulings on his causes of action for false light or, although referenced in the brief's "Issues Presented" section, unfair competition.  Nor does it present a legal argument as to a theory of wrongful foreclosure based on section 2924, subdivision (a)(1)(C).  Accordingly, we deem him to have forfeited any challenge to the rulings on those points.  "Issues do not have a life of their own: if they are not raised or supported by argument or citation to authority, we consider the issues waived."  (*Jones v. Superior Court* (1994) 26 Cal.App.4th 92, 99.)

## DISPOSITION

The order and judgment on demurrer are reversed as to the causes of action for breach of contract and wrongful foreclosure in violation of section 2924c.  In all other respects the judgment is affirmed.  Walker is entitled to costs on appeal. (Cal. Rules of Court, rule 8.278.)

_____

Siggins, J.


We concur:



_____

McGuiness, P.J.



_____

Pollak, J.







Walker v. PennyMac, A142849

11